**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Scudder Financial Communications, Inc | : | |
| Scudder Productions | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | Civil Action No. 06- |
| ICC Planned Solutions, LLC, | : | |
| | : | |
| Defendants. | : | |

**COMPLAINT**

Plaintiffs, Scudder Financial Communications, Inc. and Scudder Productions, (Plaintiffs are hereinafter collectively referred to as "Scudder") file this action against ICC Planned Solutions, LLC asserting breach of contract, a violation of the Copyright Infringement Act, 17 U.S.C. §§ 101 et seq., a violation of Pennsylvania Uniform Trade Secrets Act, 12 P.S. § 5301 and for an accounting as a result of the wrongful theft and use of Scudder's confidential and proprietary information and in support thereof allege as follows:

II.     PARTIES, JURISDICTION AND VENUE

1.     Scudder Financial Communications, Inc., a Pennsylvania corporation, having an address at Box 337, Exton, PA  19341, is a marketing company which at all times relevant hereto provided informational and retirement educational services to various financial and brokerage institutions, utilizing a multimedia enrollment system programs that provides to employees educational and

motivational materials encouraging the employees' participation and enrollment in their employers' retirement plans ("the Enrollment Program").

2. Scudder Productions is a sole proprietorship owned by William Scudder, having an address at Box 337, Exton, PA 19341, which produces and writes the Enrollment Program for Scudder Financial Communications, Inc.

3. Scudder Productions created the Confidential Information involved in this action and owns the copyrights involved herein and has authorized Scudder Financial Communications, Inc. to use such Enrollment Program and Confidential Information for whatever purpose necessary.

4. ICC Planned Solutions, LLC is a competitor of Scudder that offers similar services as those offered by Scudder and specifically offers the services set forth in paragraph 1 above.

5. Jurisdiction is based upon diversity of citizenship as all parties are residents of different states with an amount in controversy in excess of $100,000 and upon federal subject matter as this action arises under the laws of the United States, specifically the Copyright Infringement Act, 17 U.S.C. §§ 101 et seq. as well as upon the consent of ICC as set forth in the contract underlying this action

6. Venue is appropriate in the United States District Court for the Eastern District of Pennsylvania as the causes of action arose in this judicial district, transactions or events out of which the causes of action arose took place in this judicial district, Defendant ICC does business in this judicial district and Scudder is a Pennsylvania corporation which has its principal place of business in this judicial district.

II.    STATEMENT OF FACTS

   A. The Parties' Contractual Relationship And Scudder's Disclosure Of Its
      Confidential Information to ICC

7.    On or about April 27, 2004, a representative of ICC, Doug Hall, contacted

      Scudder's President and CEO, William Scudder, inquiring into the possibility

      of ICC marketing and or acquiring Scudder's Retirement Programs.

8.    Initially, ICC desired to acquire the intellectual property and existing and

      related materials regarding Scudder's Retirement Enrollment Programs, which

      included videos workbooks, an on-line "Enrollment Wizard" and an on-line

      "Build-A-Plan" a program for creating client specific print materials.

      (hereinafter these items and the Enrollment Programs are referred to as

      Scudder's "Confidential Information").

9.    Mr. Scudder informed Mr. Hall that he would consider the possibility of a

      business arrangement whereby ICC would market the Scudder Enrollment

      Program, for which ICC would compensate Scudder.

10.   On or about April 30, 2004, Mr. Scudder informed Mr. Hall that prior to any

      negotiations involving Scudder's Enrollment Program, ICC would have to

      sign Scudder's Confidentiality Agreement.

11.   Accordingly, on April 30, 2004, Scudder Financial Communications, Inc. and

      ICC Plan Solutions, LLC executed a Confidentiality Agreement ("the

      Agreement") a copy of which is attached hereto as Exhibit "A".

12.   This Agreement was executed for the purposes of protecting the Confidential

      Information that Scudder was going to disclose to ICC.

13.   In addition to the protection of Scudder's Confidential Information, the Agreement was also intended to prohibit the use of the Confidential Information other than for the purposes of ICC's negotiations with Scudder. The Agreement provided that ICC would not disclose, publish or otherwise reveal any of the Confidential Information received from Scudder to any other party whatsoever except with the specific prior written authorization of Scudder.

14.   Furthermore, the Confidential Information furnished to ICC in tangible form was not to have been duplicated except for the purposes set forth in the Agreement.  The Agreement specifically set forth that the rights conveyed in the agreement did not constitute a license nor did the Agreement evidence any intent by a party to purchase any products or services.

15.   Upon Scudder's receipt of the Agreement signed by ICC, on April 30, 2004, Scudder created a user name and password for Mr. Hall to permit Mr. Hall and ICC to access a demonstration web site that Scudder had created to showcase the Scudder Enrollment Program.

16.   The user name and password created for ICC would permit ICC to view the screens and the manner in which the screens worked; the user name and password would not permit ICC to access the software source code or the programming behind the screens.

17.   In addition to providing ICC with access to the demonstration web site, Scudder also e-mailed to ICC a blanket offer form that Scudder had previously sent to its clients offering the sale of Scudder's programming

accompanied by a description of the offer.  A copy of this e-mail material is attached here to Exhibit "B**"**.

18.    In addition to the material already provided, Scudder emphasized to ICC that one component of the program, the Retirement Video Self-enrollment program, was a critical and valuable component thereof.  Prior to pointing it out, and demonstrating it to ICC on the website, ICC was not aware of the Self-enrollment program.   Upon being educated on the self-enrollment program, ICC specifically recognized that this program was unique and that there was nothing like it on the market.

19.    Between May 3, 2004 and May 14, 2004, Mr. Scudder communicated in detail with ICC regarding how the Scudder Enrollment Program materials worked and the corresponding economic efficiencies they provide.

20.    ICC represented to Scudder that ICC was very interested in working out an arrangement that would allow ICC to market the Scudder materials as its own.

21.    On May 14, 2004, ICC provided in an e-mail offer to Scudder, a copy of which is attached to his Exhibit "C". Mr. Scudder promptly notified ICC that the offer was unacceptable.

22.    On or about May 19, 2004, Mr. Scudder provided to ICC the executive summary of Scudder's business plan for the Enrollment Program and other materials explaining the program's operation and its value in the marketplace. A copy of these materials is attached hereto as Exhibit D.

23.    Between May 1, 2004, and May 28, 2004, ICC had accessed Scudder's web site on 40 separate occasions.

C.      ICC Violates the Confidentiality Agreement

24.     On Memorial Day, May 29, 2004, ICC, through Mr. Hall, inquired as to
        whether Scudder had shut down its server because he could not access it.

25.     Upon checking Scudder's Internet provider, Scudder learned that on or about
        May 29, 2004, Scudder's Internet server had been surreptitiously and
        improperly accessed by circumventing the password program and that the
        administrative files, passwords and user tracker had been deleted.

26.     The effect of the server having been surreptitiously and improperly accessed
        by circumventing the password program was that whoever did so was able to
        look behind the screens of the program and actually view the software source
        code and program language itself.

27.     Shortly thereafter, Doug Hall informed Mr. Scudder that ICC was uncertain if
        it needed Scudder's programming and that ICC was considering developing it
        on its own.

28.     On or about June 14, 2004, ICC, through a telephone call from Mr. Hall, ICC
        informed Mr. Scudder that ICC had decided to develop its own enrollment
        program using its own programming.   On that date, Mr. Scudder was
        informed that the ICC program would be entirely different from the Scudder
        program.

29.     In November of 2004, Mr. Scudder viewed the ICC web site and discovered
        that ICC was offering an enrollment program that was extremely similar to the
        Scudder Enrollment Program.

30.     Mr. Scudder also acquired a copy of the ICC materials and, upon review, determined that the ICC workbooks were very similar in design, content and concept, including a generic workbook with personalized inserts, to the Scudder workbooks.  Of critical concern was the fact that that the concepts of the unique video Self-enrollment program had been transferred directly to the ICC materials, in direct contravention of the copyright as well as the confidentiality agreement.

31.     By way of example only, ICC had lifted exact quotes and references as set forth in the Scudder materials attributing those quotes to the same incorrect sources to which Scudder had attributed them.

32.     Additionally, ICC copied exact Scudder plan specific inserts for use in its own materials; the software program necessary to generate such a plan specific insert would have had to have been derived from the Scudder website.

33.     Furthermore, ICC duplicated directly Scudder's video self-enrollment program which was unique in the retirement education industry to Scudder.

34.     Attached here to as Exhibits "E" and "F" are two comparisons between the Scudder self enrollment program and the ICC self enrollment program as well as a comparison between Scudder's forms and materials and ICC's forms and materials establishing the striking similarity between the two programs.

35.     By letter dated March 4, 2005, a copy of which is attached hereto as Exhibit "G", Scudder's counsel notified ICC that Scudder believed that ICC was currently using Scudder's workbooks and supplemental insertions, as well as other retirement and education materials, including self enrollment videos,

that contained items of Scudder's intellectual property and demanded that ICC cease and desist immediately using the intellectual property.

36. Scudder also requested that ICC confirm that it had not violated the Confidentiality Agreement, that ICC would not in the future use any of Scudder's property and that ICC would segregate and protect Scudder's materials.

37. Despite Scudder's demands, ICC continues to use Scudder's intellectual property in violation of Scudder's contractual rights under the Confidentiality Agreement, the statutes of the United States of America and the statutes of the Commonwealth of Pennsylvania.

C.    CAUSES OF ACTION

Count I – Breach of the Confidentiality Agreement

38. Scudder incorporates herein by reference paragraphs 1 through 37 of its Complaint as if set forth at length.

39. ICC has disclosed, published or/and revealed the Confidential Information received from Scudder to other parties without the specific prior written authorization of Scudder.

40. ICC duplicated the information provided to ICC by Scudder in confidence for purposes not set forth in the Confidentiality Agreement and without Scudder's consent.

41. ICC's conduct was improper and constituted a breach of the Confidentiality Agreement which breach has caused Scudder damage in excess of $100,000.

WHEREFORE, Plaintiffs respectfully demand that this Court enter judgment in thier favor and against ICC: (a) enjoining ICC from using and/or disclosing and profiting from the use and/or disclosure of any and all information in which Scudder claims a proprietary interest and any works derived from Scudder's proprietary information, including without limitation ICC's video enrollment program and impounding such materials; (b) ordering a disgorgement of profits realized by ICC through the use of Scudder's Confidential Information, and; (c) awarding any other relief which this Court deems just and proper.

<u>Count II - Violation of the Copyright Infringement Act, 17 U.S.C. §§ 101 et seq.</u>

42.   Scudder incorporates herein by reference paragraphs 1 through 41 of its Complaint as if set forth at length.

43.   Scudder is the registered owner of the copyright to the Confidential Information and products at issue in this case.

44.   As the copyright holder, Scudder has the exclusive right to distribute, and to authorize distribution of, its copyrighted work.

45.   ICC has violated Scudder's rights under the copyright by stealing these materials from the Scudder website or using them in violation of the Confidentiality Agreement and without consent, as follows:

   a. Offering an enrollment program that was very similar to the Scudder enrollment program in that it includes a video self-enrollment component and certain investment educational print materials.

    b.  Marketing workbooks which were very similar in design, content and concept, to the Scudder material including a generic workbook with personalized inserts;

    c.  Lifting exact quotes from the Scudder materials;

    d.  Copying exact Scudder plan specific inserts for use in its own materials and the software program necessary to generate such a plan specific insert;

    e.  Duplicating directly Scudder's video self-enrollment program that was unique in the retirement education industry to Scudder.   See Exhibits "E" and "F"

46.    ICC's conduct constitutes direct and/or contributory infringements of Scudder's copyrights.

47.    ICC's violations of the law have caused damage to Scudder in excess of $100,000.

WHEREFORE, Plaintiffs respectfully demand that this Court enter judgment in their favor and against ICC: (a) enjoining ICC from using and/or disclosing and profiting from the use and/or disclosure of any and all information in which Scudder claims a proprietary interest and any works derived from Scudder's proprietary information, including, without limitation ICC's video enrollment program and impounding such materials; (b) awarding statutory damages, including attorneys fees and exemplary damages, against ICC under 17 U.S.C. § 504(c) and 17 U.S.C. § 505, (c) ordering a disgorgement of profits realized by ICC through the use of Scudder's Confidential Information, and; (d) awarding any other relief which this Court deems just and proper.

Count III - Violation of Pennsylvania Uniform Trade Secrets Act, 12 P.S. § 5301

48.    Scudder incorporates herein by reference paragraphs 1 through 47 of its Complaint as if set forth at length.

49.    As set forth above, during the period of time which Scudder was protected by the terms of the Confidentiality Agreement, ICC became privy to Scudder's confidential information.

50.    Scudder's confidential information is of value to Scudder and important to the conduct of its business.

51.    The confidential information was provided to ICC while it was in a position of trust and confidence under circumstances so as to make it inequitable and unjust for ICC to use, disclose or profit from the Confidential Information.

52.    The Confidential Information constitutes trade secrets under Pennsylvania's Uniform Trade Secrets Act, 12 Pa. C.S.A. § 5301, et seq.

53.    ICC's conduct is a violation of the Pennsylvania's Uniform Trade Secrets Act.

54.    ICC's conduct has caused damage to Scudder in excess of $100,000.

WHEREFORE, Plaintiffs respectfully demand that this Court enter judgment in their favor and against ICC: (a) enjoining ICC from using and/or disclosing and profiting from the use and/or disclosure of any and all information in which Scudder claims a proprietary interest and any works derived from Scudder's proprietary information, including without limitation ICC's video enrollment program and impounding such materials; (b) awarding attorneys fees and exemplary damages against ICC as authorized under the Pennsylvania Uniform Trade Secrets Act, and; (c) awarding any other relief which this Court deems just and proper.

<u>Count IV – Request for Accounting</u>

55.    Scudder incorporates herein by reference paragraphs 1 through 54 if its Complaint as if set forth at length.

56.    ICC's use of the Scudder Confidential Information has resulted in significant profits for ICC, which ICC would not have realized but for its use of the Scudder Confidential Information.

57.    Scudder is entitled to the profits earned by ICC on account of ICC's use of the Scudder Confidential Information.

58.    ICC is required to account to Scudder for all revenues generated, and profits made, through the use by ICC of the Scudder Confidential Information.

WHEREFORE, Plaintiffs respectfully demand that this Court order ICC to account for all revenues generated and profits made through the use of the Scudder Confidential communication and award any other relief which this Court deems just and proper.


                                       LAMB McERLANE PC



Date:   January 17, 2006            By:_____
                                       Guy A. Donatelli, Esquire
                                       Attorney I.D. No. 44205
                                       Joel L. Frank, Esquire
                                       Attorney I.D. No. 46601
                                       24 E. Market Street – P.O. Box 565
                                       West Chester, PA  19381-0565
                                       (610) 430-8000